THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Haliron Power, LLC,<br><br>      Plaintiff,<br><br>v.<br><br>Fluor Daniel Caribbean, Inc., a subsidiary of Fluor Enterprises, Inc., Zurich American Insurance Company, Federal Insurance Company, Travelers Casualty and Surety Company, Fidelity and Deposit Company of Maryland, and Liberty Mutual Insurance Company,<br><br>      Defendants. | Civil Action No.: 6-18-cv-02911-JD<br><br>**ORDER AND OPINION** |

Before the Court is Plaintiff Haliron Power, LLC's ("Haliron" or "Plaintiff") Motion to Amend the Court's Findings of Fact and Conclusions of Law, for a New Trial, and to Alter or Amend Judgment (DE 181) under Rules 52 and 59(a) and (e), Fed. R. Civ. P. Defendants Fluor Daniel Caribbean, Inc. ("FDC"), a subsidiary of Fluor Enterprises, Inc. (collectively "Fluor") and the "Surety Defendants"[1] (collectively "Defendants") oppose the motion. (DE 184.) For the reasons below, the motion is denied.

---

[1] The Surety Defendants include Zurich American Insurance Company, Federal Insurance Company, Travelers Casualty and Surety Company, Fidelity and Deposit Company of Maryland, and Liberty Mutual Insurance Company.

## I.     BACKGROUND

In this breach-of-contract case, Haliron sued Defendants on September 14, 2018, for breach of contract, quantum meruit, violation of S.C. Code Ann. § 27-1-15, and a Miller Act payment-bond claim.[2] Haliron's claims arise from its subcontract with FDC regarding the emergency restoration of the power grid in Puerto Rico, including transmission and distribution lines, following Hurricanes Irma and Maria in September 2017. (DE 179 at 4.) Plaintiff filed its complaint in the Greenville County Court of Common Pleas. (DE 1-2.) FDC removed the action on October 26, 2018. (DE 1.) On February 7, 2019, Plaintiff filed its Amended Complaint (DE 17) to add claims against FDC's sureties who provided payment bonds and establish federal-question jurisdiction. Following discovery and pretrial motions, the Court tried this case without a jury from January 10 to January 19, 2024. Haliron sought payment for $21,428,00524 in unpaid invoices for work on the project. (DE 179 at 19.) But "FDC validated and paid $16,618,994.48 of Allowable Costs on the Invoices, accounting for tax withholdings and FDC credits owed." (*Id.*)

At the end of Plaintiff's case, Defendants made a Motion for Judgment on Partial Findings, FRCP 52(c), which was taken under advisement and renewed by Defendants at the end of the trial. On June 27, 2024, this Court made Findings of Fact and Conclusions of Law ("FOF & COL") under Rule 52, Fed. R. Civ. P., and ruled

---

[2]     The Miller Act provides that plaintiffs "must" assert their claim "in the name of the United States for the use of the person bringing the action[.]" 40 U.S.C. § 3133(3)(A). That did not happen here, but it is not a problem: courts have concluded that failure to comply with this provision of the statute is "at most a formal irregularity, which ought not to affect the jurisdiction of the District Court." *Blanchard v. Terry & Wright, Inc.*, 331 F.2d 467, 469 (6th Cir. 1964).

for Defendants on Plaintiff's claims. (DE 179.) After that, the Clerk entered a judgment for Defendants. (DE 180.)

On July 25, 2024, Plaintiff moved either to amend the Court's FOF & COL or for a new trial for these reasons:

1) the Davis-Bacon Act does not require certified payroll for work that was not conducted in Puerto Rico, and therefore the Court erred in ruling that certified payroll was contractually and/or statutorily required for labor invoices for mobilization and demobilization;

2) the Court misinterpreted the plain meaning of a "fully blended rate" under the [subc]ontract and erroneously applied that meaning to invoices for mobilization and demobilization;

3) the Court erred in applying an after the fact definition of "period of performance" adopted unilaterally by Defendants[] that was contrary to the terms of the [subc]ontract.

4) the Court erred in ruling that Haliron did not present valid invoices for equipment by not considering the detailed evidence presented by Haliron concerning equipment rental agreements, shipping manifest information, and audit information that validated Haliron's equipment under the terms of the [subc]ontract;

5) the Court erred by not considering Haliron's properly documented invoices for reimbursable "Other Direct Costs" for $293,710.00, referred to generally during trial as "per diem";

6) the Court erred by not applying the prior[-]breach doctrine under South Carolina law for (i) Fluor's failure to pay Haliron's invoices within thirty days after submission and (ii) Defendants' failure to pay non-problematic portions of invoices, while withholding payment for problematic portions of invoices; under the facts of this case, either of these prior breaches render moot Fluor's various [subc]ontract-based arguments for not paying Haliron's invoices, and these prior breaches further trigger Haliron's entitlement to recover under its quantum meruit [and] Miller Act claim[s];

7) the Court erred by not considering or applying Fluor's breach of the contractual duty of good faith and fair dealing;

8) the Court erred by not applying the Miller Act for Haliron's quantum meruit claim under the Miller Act;

9) the Court erred in ruling that Haliron had not proven pursuant to S.C. Code Ann. § 27-1-15 that Fluor was not reasonable or fair in

3

> investigating its invoices after the August 20, 2018[,] demand letter; and
>
> 10) the Court erred in denying Haliron's claim for prejudgment interest based on Fluor's failure to properly withhold taxes.

(DE 181 at 1–3.)

## II.     STANDARD

"In an action tried on the facts without a jury . . . , the court must find the facts specially and state its conclusions of law separately." Rule 52(a)(1) Fed. R. Civ. P. "A party may later question the sufficiency of the evidence supporting the findings . . . ." Rule 52(a)(5), Fed. R. Civ. P., "Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." Rule 52(a)(6), Fed. R. Civ. P. "[T]he court may amend its findings—or make additional findings—and may amend the judgment accordingly." Rule 52(b)(2), Fed. R. Civ. P. "A motion pursuant to Rule 52 may be made in conjunction with a motion to alter or amend a judgment pursuant to Rule 59(e)." *PCS Nitrogen, Inc. v. Ross Dev. Corp.*, 126 F. Supp. 3d 611, 631 (D.S.C. 2015), *dismissed sub nom. PCS Nitrogen Inc. v. Ross Dev. Corp. Rivers*, No. 16-1540 (L), 2018 WL 2111081 (4th Cir. Mar. 19, 2018). "Rule 52(b) motions are more favored when made before any indication is given by the court as to the decision," as "a Rule 52(b) motion is intended to correct manifest errors of law or fact or to present newly discovered evidence." *United States v. Carolina E. Chem. Co.*, 639 F. Supp. 1420, 1423 (D.S.C. 1986).

"A district court has the discretion to grant a Rule 59(e) motion only in very narrow circumstances." *Hill v. Braxton*, 277 F.3d 701, 708 (4th Cir. 2002).

Specifically, the Court may reconsider its prior order only "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Collison v. Int'l Chm. Workers Union,* 34 F.3d 233, 236 (4th Cir. 1994) (quoting another source).

Alternatively, under Rule 59(a), a "court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "Despite the permissive language of this Rule, [the Fourth Circuit] ha[s] interpreted it to require district courts to 'set aside the verdict and grant a new trial' where '(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'" *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 268 (4th Cir. 2021) (quoting *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 346 (4th Cir. 2014). "In considering a motion for a new trial, a trial judge may weigh the evidence and consider the credibility of the witnesses . . . ." *King v. McMillan*, 594 F.3d 301, 314 (4th Cir. 2010) (quoting *Chesapeake Paper Prod. Co. v. Stone & Webster Eng'g Corp.*, 51 F.3d 1229, 1237 (4th Cir. 1995)). "The decision to grant or deny a motion for a new trial is within the sound discretion of the district court and will not be disturbed absent a clear showing of abuse of discretion." *Id.*

### III.  DISCUSSION

Plaintiff's motion seeks to alter or amend the FOF & COL or obtain a new trial based on ten grounds purportedly "to correct a clear error of law or prevent manifest injustice." *Collison,* 34 F.3d at 236 (quoting another source). "Clear error occurs when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Harvey*, 532 F.3d 326, 336–37 (4th Cir. 2008) (internal quotation marks omitted); *see also United States v. Martinez–Melgar*, 591 F.3d 733, 738 (4th Cir. 2010). Manifest injustice occurs when the court "has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension . . . ." *Campero USA Corp. v. ADS Foodservice, LLC*, 916 F. Supp. 2d 1284, 1292–93 (S.D. Fla. 2012) (citations omitted). With these guideposts, the Court considers Plaintiff's contentions.

### A. Whether the Court erred in ruling that certified payroll was contractually or statutorily required for labor invoices for mobilization and demobilization

Plaintiff argues that "[t]he Court relied on testimony that the Davis-Bacon Act applied to this project to conclude that Certified Payroll records were a condition precedent to a proper invoice." (DE 181-1 at 9.) These records were a feature of the parties' agreement. As the Court explained in the FOF & COL, FDC and Haliron executed Subcontract R1PR-90-KG0036 ("the Subcontract") in which Haliron agreed to "perform electric distribution and transmission construction services" (referred to in the Subcontract as "Work"). (*Id.* at 4.) The Subcontract was a time-and-materials requirements contract (*id.*) that required Haliron to provide certified payroll under

several contractual provisions, including Subcontract Part I, Article 6.2.1, and Part II, Articles 1.1, 7.7.1 through 7.7.6, and 7.8.

Turning to Haliron's argument: Haliron does not show where or how the Court relied on the asserted testimony. Nevertheless, this Court said,

> Invoice HP-MOB only contained $34,500 in labor; when Haliron resubmitted it as Invoice HP-MOB REV 1, Haliron removed all of the mileage, equipment, and per diem charges and increased the labor costs by more than 35 times the original amount to $1,229,070.53. As discussed below, the amounts in HP-MOB REV 1 are not allowable because the mobilization costs are built into the "Fully Burdened Inclusive Labor Hourly Rate" and labor hours billed by Haliron are not supported by Certified Payroll records. Mobilization has no corresponding Contract Line Item Number in the Subcontract's Schedule of Values, which the Court finds supports the conclusion that such pre-port mobilization efforts were excluded as billable under Subcontract Part II, Article 1.

(DE 179 at 41.) The Court also found that:

> FDC presented compelling evidence that Certified Payroll records submitted by Haliron indicated that many of the employees that Haliron billed for in HP-MOB REV 1 were not paid for the same days for which Haliron billed in the Invoice. . . . For example, David Boone, an employee of Haliron, was billed in HP-MOB REV 1 for twelve hours on January 13 through January 17, 2018, but according to Haliron's Certified Payroll, David Boone was not paid for any hours on those same days.

(*Id.* at 45 (citation omitted).)

The Court further explained that "[t]he parties also incorporated the Federal Acquisition Regulation ("FAR") requirements as material terms to the Subcontract terms and conditions in Subcontract Part II and Subcontract Part IV." (*Id.* at 5.) Subcontract Part IV incorporates FAR 52.222-8, FAR 52.222-10, and FAR 52.222-11. (*Id.*) FAR 52.222-8, "Payrolls and Basic Records," requires:

7

(a) Payroll and basic records relating thereto shall be maintained by the Contractor during the course of the work and preserved for a period of 3 years thereafter for all laborers and mechanics working at the site of the work.

. . .

(b) (1) The Contractor shall submit weekly for each week in which any contract work is performed a copy of all payrolls to the Contracting Officer. . . . (2) Each payroll submitted shall be accompanied by a Statement of Compliance, signed by the Contractor or subcontractor or his or her agent who pays or supervises the payment of the persons employed under the contract and shall certify . . . (i) that such information is correct and complete;

. . .

(c) The Contractor or subcontractor shall make the records required under paragraph (a) of this clause available for inspection, copying, or transcription by the Contracting Officer . . . .

48 C.F.R. § 52.222-8 (effective July 12, 2021). Given these contract provisions on payroll records and other evidence, Haliron has not shown where a mistake has been made or how Haliron has been patently misunderstood. Thus, the Court denies Haliron's motion on this ground.

### B. Whether the Court misinterpreted the plain meaning of a fully burdened rate and erroneously applied that meaning to invoices for mobilization and demobilization

Plaintiff maintains that a "fully burdened rate" does not exclude mobilization and demobilization costs under the Subcontract, among other things. (DE 181-1 at 15.) Yet the Subcontract at Part II, Article 1.1, says the Fully Burdened Rate "shall include wages, indirect costs, general and administrative expense, and profit." (PEX 1.) Article 1.1 also provides that "[n]o reimbursement will be made to the Contractor for . . . travel time to or from the work place assignment." (*Id.*) Part II, Article 1.5, says,

8

> All costs and expenses (which are not expressly stated in this Article 1.0 to be reimbursable) necessary for Contractor to perform the Work shall be deemed included within the rates or the markups set forth herein and are to be performed by Contractor at no additional cost to Company.

(PEX 1.) "The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." *Schulmeyer v. State Farm Fire & Cas. Co.*, 353 S.C. 491, 495, 579 S.E.2d 132, 134 (2003). Anthony Simmons, an FDC employee who negotiated the Subcontract, testified that if the parties did not intend for mobilization costs to be included in the fully burdened rate, then "any item that . . . is billable should be listed in the schedule of values." (Tr. 886:6-12.) The Subcontract's Schedule of Values has no line item for Mobilization. "Parties to a contract have the right to construct their own contract without interference from courts to rewrite or torture the meaning of the policy to extend coverage." *Schulmeyer*, 353 S.C. at 495, 579 S.E.2d at 134. Accordingly, the Court finds no grounds to amend the FOF & COL.[3]

### C. Whether the Court erred in ruling that Haliron did not present valid invoices for equipment

Plaintiff contends, among other things, that it "submitted a very detailed summary of each equipment invoice, how Haliron validated these invoices, and why

---

[3]     Plaintiff also maintains that this Court erred when it found that the "Period of Performance" started on January 17, 2018, based on testimony from William Weems ("Weems"). (DE 181-1 at 19.) But Weems's testimony does not change the terms of the contract. The Court found that

> The Subcontract's effective date was January 8, 2018. . . . However, Haliron's period of performance [] on the Project began later with FDC's direction to Haliron to begin mobilization of "essential personnel" on January 17, 2018.

(DE 179 at 7 (citations omitted).) Since Weems's testimony does not change the legal effect of the Subcontract's payment terms, the Court declines to amend this finding.

Fluor breached the Contract by claiming these equipment invoices were not properly 'validated.'" (DE 181-1 at 22.) Plaintiff insists that the Court did not address any of its evidence in the FOF & COL that "support[ed] valid claims for equipment totaling over $1.3 million." (*Id.*)  To begin with, Part II Article 5.4 of the Subcontract says,

> Contractor shall prepare all invoices in a form satisfactory to and approved by Company. Invoices shall be submitted in accordance with FAR 52.232-7 'Payments under Time-and-Material and Labor-Hour Contracts'. Any invoice submitted, which fails to comply with the terms of this Contract, including the requirements of form and documentation, may be returned to Contractor. Any costs associated with the resubmission of a proper invoice shall be to Contractor's account.

(PEX 1.) The Court found that "Haliron did not prove entitlement to these outstanding equipment amounts on the Invoices because its allegations regarding such damages were too speculative and lacked the requisite specificity to overcome the requirements of the Subcontract." (DE 179 at 55.) In doing so, the Court said:

> Considering the evidence in the record at trial, Haliron's material/equipment charges are unallowable categorically for two reasons: (1) Haliron billed equipment after being demobilized from Puerto Rico and (2) Haliron failed to meet its contractual burden to validate that the equipment was actually in Puerto Rico and therefore available for use on the Project. As to validation, there were two ways that equipment was validated. First, if the equipment VIN/serial number appeared on a shipping manifest for one of the transport ships to Puerto Rico, that was considered to validate that the equipment was mobilized for use in Puerto Rico. Second, Haliron could provide rental documentation showing that the equipment had been rented during the period in which Haliron was performing Work in Puerto Rico (*i.e.*, the POP). In fact, the exhibits prepared by Haliron for trial still contained errors that did not allow validation.
>
> For example, Haliron's equipment billing trial exhibit attempts to validate equipment costs that were included on rental invoices from Puerto Rico, but the rental invoices were dated after the date Haliron billed the equipment. This rental equipment would be unallowable based on the date of the rental invoice.

(*Id.* at 54) (citations omitted.) Plaintiff's arguments go to the weight of its evidence and its burden of persuasion, but do not show a clear error or manifest injustice. And so, Plaintiff's motion on this ground is denied.

### D. Whether the Court erred by not considering Haliron's per diem for $293,710.00

Plaintiff argues next that the Court disregarded Haliron's per diem charges. (DE 181-1 at 23.) The FOF & COL say otherwise. The Court found that "Haliron introduced Certified Payroll to evidence payment of per diem amounts." (DE 179 at 60.) But the Court noted that the evidence showed:

> Haliron did not pay per diem to at least some of its personnel and subcontractors during times for which it billed FDC for the same. For example, Primoris' Certified Payroll for the week ending February 18, 2018, reflected ten employees were paid hourly wages but no per diem amount is stated in the Certified Payroll report. Similarly, Foreman's Certified Payroll for the week ending February 13, 2018, reflected that 189 Foreman employees were paid hourly wages but, again, the Certified Payroll reflects that those 189 employees were not paid per diem. Additionally, Haliron's own subcontractor invoice spreadsheet had no dollar value under the column for Foreman and Primoris and specifically stated "no per diem" below the fields for Primoris and Foreman. This documentary evidence contradicts the testimony of Mr. Weems that all individuals working on behalf of Haliron were paid per diem throughout the Project.

(*Id.* at 61) (citation omitted.) Despite Plaintiff's inaccurate documentation supporting its request for per diem, this Court held,

> As a matter of the Subcontract's terms, per diem-type expenses would not be allowable if FDC provided the same to Haliron's personnel. Upon review, no provision in the Subcontract authorizes reimbursement for costs for per-diem related items if Haliron determined those items to be substandard. Subcontract Part I, Article 5.1, clearly states that "[FDC] will supply . . . [l]ife support services for all [Haliron] employees," which included food, incidentals, and lodging. . . . Thus, when Life Support Services were provided by FDC, per diem was an unallowable cost.

11

(DE 179 at 60 (citation omitted).) Plaintiff has not shown where or how the Court patently misunderstood this matter or any manifest injustice.

### E. Whether the Court erred by not applying the prior-breach doctrine under South Carolina law

Plaintiff contends that FDC cannot rely on contractual provisions to defend its nonpayment to Haliron and that this Court failed to apply the prior-breach doctrine when it ruled for FDC. (DE 181-1 at 24 ("where a contract is not performed, the party who is guilty of the first breach is generally the one upon whom all liability for the nonperformance rests" (quoting *Willms Trucking Co. v. Jw Constr. Co.*, 314 S.C. 170, 178, 442 S.E.2d 197, 201 (S.C. Ct. App. 1994)).) Plaintiff claims FDC breached the contract when it (1) failed to pay Haliron's invoices within thirty days after submission and (2) failed to pay undisputed portions of invoices, while withholding payment for disputed portions of invoices. Plaintiff also claims that these breaches also trigger Haliron's entitlement to recover under its quantum-meruit and Miller-Act claim. These arguments would be *instructive* if the FOF & COL found FDC breached the Subcontract, and the Court overlooked FDC's breach when it ruled for FDC. But neither happened.[4] And so, Plaintiff's invitation to revisit these claims is improper under Rule 59(e).

"Rule 59(e) motions may not be used[] . . . to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a

---

[4]   Plaintiff also seeks to alter or amend the order because Plaintiff believes that FDC breached its contractual duty of good faith and fair dealing under the Subcontract. (DE 181-1 at 26.) At any rate, the Court did not make this finding in the order and Plaintiff has not offered any new evidence to support this claim.

12

case under a novel legal theory that the party had the ability to address in the first instance." *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). The Fourth Circuit has stressed that "[i]n general 'reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.'" *Id.* (quoting another source). Since Plaintiff offers no new basis to find that FDC has breached the contract, the Court declines to relitigate this matter.[5]

F. **Whether the Court erred when it found that Haliron had not made a prima facie case against FDC on Haliron's Section 27-1-15 claim**

Plaintiff asks this Court to alter or amend the FOF & COL because Plaintiff believes it met its prima facie burden showing that FDC's investigation of its claim for payment was unreasonable. Under Section 27-1-15 of the South Carolina Code, Haliron had the initial burden of presenting prima facie evidence that FDC did not make a fair and reasonable investigation. *See Moore Elec. Supply, Inc. v. Ward*, 316 S.C. 367, 374–75, 450 S.E.2d 96, 100 (S.C. Ct. App. 1994) (finding that the moving party "could have used discovery to ascertain the scope of [the defending party's]

---

[5]     The Court equally rejects Plaintiff's prejudgment-interest-on-late-tax payments, Miller-Act, and quantum-meruit grounds because Plaintiff is simply relitigating claims it has lost on. For instance, the Court found:

> FDC and Haliron entered a valid, binding Subcontract. . . . Haliron's claim for quantum meruit arises from and relates to precisely the same subject matter as the Subcontract. Haliron cannot use the equitable doctrine of quantum meruit to subvert the terms and conditions of the Subcontract. Without an additional basis to support quantum meruit, and Haliron provided no evidence of such, Haliron has no equitable claim.

(DE 179 at 64–65 (citation omitted).) As for Plaintiff's Miller Act claims, the Court held "[f]inding no liability against FDC, the Surety Defendants have no corresponding liability under the Miller Act. The Court finds in favor of the Surety Defendants on the payment bond claim." (*Id.* at 69.) Lastly, the issue of prejudgment interest on late tax payments was not litigated, nor did the Court rule on this matter in the FOF & COL .

13

investigation and presented the evidence to the trier of fact to determine whether the steps taken were 'reasonable and fair'" and a failure to present evidence amounts to a failure to meet the prima facia burden (quoting another source)); *see also S. Indus. Contractors, LLC v. O'Brien & Gere, Inc. of N. Am.*, No. 2:19-CV-1691-RMG, 2021 WL 1381120, at *8 (D.S.C. Apr. 12, 2021) (finding that "while Plaintiff voices disagreement with the conclusions of Defendant's [. . .] investigation of Plaintiff's demand letter, it cites to no evidence from which a trier of fact could infer that Defendant['s…] investigation itself was unreasonable.") (citing *Moore Elec. Supply, Inc.*, 316 S.C. at 374–75, 450 S.E.2d at 100).

At trial, Haliron offered Weems, who testified that Plaintiff sent a demand letter to FDC, but FDC did not make payment of invoiced amounts. (Tr. 453:1–455:3.) Weems did not testify on FDC's efforts to investigate Haliron's demand. Thus, this testimony alone could not meet Plaintiff's burden.

At any rate, the evidence showed that FDC responded within the forty-five-day investigation period and notified Plaintiff of deficiencies that needed to be corrected. (DE 179 at 65; *see also* Tr. 741:10–743:1.) To that end, this Court found:

> The parties acknowledge that FDC denied the amounts disputed on the Invoices and that FDC continued to review supplemental documentation provided by Haliron well after the POP concluded. In fact, Haliron's correspondence . . . confirms that this was an ongoing process and that amounts were paid by FDC as they were found validated and determined to be allowable and allocable. These efforts culminated in the payment of $644,045.26 by FDC into the Court's registry, pursuant to a Fed. R. Civ. P. 67 motion and order. Haliron acknowledged that those amounts were validated by FDC only after supporting materials were provided, for the first time, during discovery. (*See* DE 85 at 5 ("Haliron produced additional and/or supplemental

documents that, for the first time, allowed FDC to substantiate" the additional payment.).)

(DE 179 at 67) (citations omitted.) Plaintiff objects to the Court's finding that "Haliron did not introduce any evidence that FDC failed to conduct a reasonable and fair investigation of the amounts owned under the Invoices . . . ." (*See* DE 181-1 at 29 (quoting in part DE 179 at 65).) While Plaintiff concedes it conducted no discovery on this matter in preparation for trial, Plaintiff points to its pre-demand letter conduct to show its actions were reasonable. (*Id.*) But Plaintiff's conduct is not at issue. Plaintiff points to several exhibits that were not admitted at trial to bolster its position. (*Compare* DE 179 at 2 (listing admitted evidence), *with* DE 181-1 at 28-34 (citing PEX 32, PEX 54, PEX 109, PEX 111-121, and PEX 127-146)). However, this is not new evidence, and these matters cannot now be considered. Therefore, the Court denies Plaintiff's motion.[6]

---

[6]    Even if this Court had found that Plaintiff had met its prima facie showing at trial *or now*, the Court still found that FDC's actions were reasonable given the deficiencies in Plaintiff's invoices. As stated in the order, this Court found that "**FDC's Final Payment Analysis Constituted a Reasonable Investigation[.]**" (DE 179 at 17) (emphasis in original.) This Court found that:

> 99.    Further, Haliron stated that it sought "some amount in excess of $644,045.26 for which it carri[ed] the burden to prove at a trial of its claims." . . .
>
> 100.   FDC did not dispute that the $644,045.26 amount was owed to Haliron and/or its subcontractors under the Subcontract after it conducted the Final Payment Analysis. . . .
>
> 101.   The amount paid in 2021 included $21,095.52 for equipment/materials and $943,655.96 for labor, prior to a credit applied to FDC (for prior overpayment) for $320,706.22, which was assessed based on provisions of the Subcontract. . . .
>
> 102.   Haliron confirmed that it "produced additional and/or supplemental documents . . . for the first time" "[w]hile litigating Haliron's claims," and these

## IV. CONCLUSION

For these reasons, the Court denies Plaintiff's Motion to Amend the Court's Findings of Fact and Conclusions of Law, for a New Trial, and to Alter or Amend Judgment (DE 181) under Rules 52 and 59(a) and (e), Fed. R. Civ. P.

**IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

Florence, South Carolina
March 28, 2025

---

    documents are what "allowed FDC to substantiate an additional amount owed to Haliron," totaling $644,045.26. . . .

    103.   "The late-provided documentation allowed FDC to validate additional costs [and] credits for labor and materials provided by Haliron during the PREPA Project. This validation, while occurring during the litigation, was the same process the [FDC] Subcontracts team used on the Project."

(DE 179 ¶¶ 99–103 (citations omitted) (quoting other sources).) Accordingly, the Court declines to grant a new trial or amend its FOF & COL.